MICHAEL R. BLAHA, ESQ., State Bar No. 89209
LAW OFFICES OF MICHAEL R. BLAHA
2530 Wilshire Boulevard, Third Floor
Santa Monica, California 90403
Telephone:        (310) 828-4847
Fax:              (310) 496-2662
E-mail:       mike@blahalaw.com

Attorney for Plaintiff GIGANTIC PICTURES, INC.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| GIGANTIC PICTURES, INC., a California corporation, | ) CASE NO.: |
| Plaintiff, | ) COMPLAINT FOR DECLARATORY JUDGMENT |
| vs. | ) |
| WILLIAM HAZELGROVE, an individual, | ) |
| Defendant. | ) |

Plaintiff GIGANTIC PICTURES, INC. ("Plaintiff") hereby brings its Complaint

for Declaratory Judgment against Defendant WILLIAM HAZELGROVE ("Defendants")

and alleges as follows:

**INTRODUCTION**

1.      This is a civil action for Declaratory Judgment to declare that Plaintiff

properly exercised its option to purchase from Defendant - and as a result is now the

COMPLAINT FOR DECLARATORY JUDGMENT                                1

owner of - the motion picture, television, other screen media and certain allied and

ancillary rights ("Rights") in and to the novel THE PITCHER (the "Work") written by

Defendant.

## THE PARTIES

2.      Plaintiff is a corporation duly formed under the laws of the State of

California with its principal place of business in Los Angeles, California.

3.      Defendant is an individual residing in St. Charles, Illinois.

## JURISDICTION AND VENUE

4.      This court has subject matter jurisdiction over Plaintiff's Complaint

pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and pursuant to 28 U.S.C. §

1331, as it arises under federal law, 28 U.S.C. § 1332 because Plaintiff and Defendant

are citizens of different states and the amount in controversy is more than $75,000 and

28 U.S.C. § 1338 because it relates to the transfer of rights under copyright pursuant to

17 U.S.C. § 106.

5.      This Court has personal jurisdiction over Defendant due to Defendant's

continuous and systematic contacts with this state and District.   In particular, by virtue

of negotiating and entering into the agreement at issue here with Plaintiff, maintaining a

representative in Los Angeles and conducting other business activities here, Defendant

has conducted substantial business in, and has significant contacts to, California and this District.

6.    Venue is proper in this court under 28 U.S.C. §§ 1391(b)(2) and (3).

### FACTS

7.    Plaintiff is a motion picture production company based in Los Angeles, California.  At some point in early 2014, one of Plaintiff's principals, Edward Bates ("Bates"), was asked by an industry colleague if Bates would be willing to talk to Defendant, a novelist whom the colleague knew who wanted to develop his novels into motion pictures.   As a result, Defendant and Bates had an initial  telephone conversation in which Defendant asked Bates to read Defendant's novel THE PITCHER ("Work") to see if Plaintiff might be interested in producing a feature motion picture or television program based on the Work.   Bates subsequently read the Work and determined that, with the right adaptation, it could in fact be the basis for a motion picture or television program.

8.    As a result, after determining that Defendant was the owner of the necessary Rights in the Work, Plaintiff negotiated an agreement dated May 18, 2014 between Defendant and Plaintiff whereby Defendant granted Plaintiff an Initial Option Period of eighteen (18) months to "shop" the Rights (i.e., approach financing sources in order to obtain Project financing with Plaintiff "attached" as a Producer) ("Shopping

Agreement").  The Shopping Agreement gave Plaintiff the right to extend that Initial

Option Period for an additional six (6) months to a "Second Option Period" for a

payment to Defendant of One Thousand Dollars ($1,000).

9.   Paragraph 1 of the Shopping Agreement provided that the consideration for

Plaintiff's option to acquire the Rights was Plaintiff's obligation to pay Defendant the

sum of One Dollar ($1.00), which Plaintiff did.   Paragraph 1 of the Amendment A to the

Shopping Agreement - which was drafted and requested by Defendant's counsel - further

provided that Plaintiff's efforts to "secure development and production financing" for a

Project based on the Work constituted consideration for Plaintiff's representation of the

Rights.  A true and correct copy of the Shopping Agreement is attached hereto as Exhibit

1 and incorporated herein by reference.

10.   On July 26, 2015, during the Initial Option Period, Plaintiff signed a

Nondisclosure Agreement with a potential financier of a motion picture Project

("Financier").  On July 29, 2015, Plaintiff received a proposed budget for the Project.

That same day, Defendant and Bates had a telephone conversation in which Bates

explained to Defendant the risk of proceeding with the Financiers on the Project.  During

that conversation, Defendant and Plaintiff agreed that if Defendant and Plaintiff decided

to move forward with the Financier, the Initial Option Period would have to be tolled

during such time as the Financier was raising the money to finance the Project.

11.    On July 31, 2015, Bates had lunch with the Financier's representatives. Later that afternoon, Defendant and Bates had another telephone conversation in which Bates outlined his assessment of the Financier's representatives and the process which lay ahead were Plaintiff and Defendant to proceed with the Financier, and reiterated the risk of doing so.   Defendant responded by e-mail at 4:17 p.m. "Great news.  I say go for it."   A true and correct copy of that e-mail is attached hereto as Exhibit 2 and incorporated herein by reference.

12.    Accordingly, as of July 31, 2015, the Initial Option Period was suspended. Since the Initial Option Period was not originally set to expire until November 18, 2015, it was Plaintiff's understanding and belief that it had an additional 110 days (July 31-November 18, 2015) remaining on the Initial Option Period from the date, if ever, that its efforts to finance the Project through the Financier ended.

13.    In or around August, 2015, the Financier requested that the Shopping Agreement be amended to clarify that Plaintiff had an option to acquire the Rights for a stated price.   As a result, and subsequent to a telephone conversation Defendant had with Bates in which Defendant agreed to do so, Defendant and Plaintiff entered into an agreement to amend the Shopping Agreement on or about November 16, 2015 (the "Option Agreement").

14.    The Option Agreement amended the Shopping Agreement so that it now more clearly granted Plaintiff an option to acquire the Rights, for a stated Purchase Price of $82,000, and extended the Initial Option Period for an additional two months from eighteen (18) months to twenty (20) months.   The Option Agreement still provided that Plaintiff could extend the Initial Option Period for an additional six (6) months for $1,000.  A true and correct copy of the Option Agreement is attached hereto as Exhibit 3 and incorporated herein by reference.

15.    The consideration for the Option Agreement's two (2) month extension of the original eighteen (18) month Initial Option Period in the Shopping Agreement, was Plaintiff's continuing efforts to obtain financing for the Project, as reflected by the potential Project financing Plaintiff had arranged with Financier.  Moreover, that two (2) month extension of the Initial Option Period was consistent with Plaintiff's understanding that the Initial Option Period had been tolled beginning July 31, 2015 pursuant to Defendant's agreement with Plaintiff to that effect on that date.

16.    In January, 2016, the Financier indicated that it would need more time to complete the financing for the Project.  Accordingly, prior to January 18, 2016 - the earliest date the Option Agreement's now twenty (20) Initial Option Period could be deemed to expire, Bates and Defendant had a telephone conversation in which Defendant agreed to further extend the Initial Option Period until March 1, 2016.

17.    Once again, the consideration for this further extension of the Initial Option Period was Plaintiff's ongoing efforts to obtain financing for the Project and, once again, this further extension was consistent with the parties' July 31, 2015 agreement that the Initial Option Period was tolled so long as Plaintiff was still working with Financier to finance a motion picture Project based on the Work.

18.    On January 26, 2016, Defendant sent an e-mail to Plaintiff confirming that the "original option" was, in fact, extended to March 1, 2016.   A true and correct copy of that January 26, 2016 e-mail is attached hereto as Exhibit 4 and incorporated herein by reference.

19.    Plaintiff was therefore very surprised to receive an e-mail from Defendant on January 29, 2016 purporting to terminate the Option Agreement.   Defendant had no rights to terminate the Option Agreement pursuant to any provision thereof or otherwise. Moreover, the Initial Option Period had been tolled by the parties' July 31, 2015 agreement or, alternatively, expired on March 1, 2016 at the earliest. Accordingly, Defendant's January 29, 2016 e-mail constituted a breach of the Option Agreement, and was of no force and effect in terminating the Option Agreement.

20.    Plaintiff's business relationship with Financier ended on or around January 28, 2016.   Accordingly, based on the parties' July 31, 2015 agreement, the Initial Option Period began to run again on that date, and expired on May 17, 2016 (110 days from

January 28, 2016).   At the earliest, the Initial Option Period expired on March 1, 2016 based on Defendant's January 26, 2016 extension thereof.

21.     On February 1, 2016, before the earliest conceivable expiration of the Initial Option Period, Plaintiff, pursuant to paragraph 1 of the Shopping Agreement, sent Defendant written notice, accompanied by the requisite One Thousand Dollars ($1,000) payment, that it was extending the Initial Option Period for six (6) months.  As a result, Plaintiff at that point had the right to exercise the Option and acquire the Rights at least until September 2, 2016.

22.     Defendant refused to accept the notice or the One Thousand Dollars ($1,000) extension payment or acknowledge the validity of the extension. Instead Defendant's attorney communicated to Plaintiff that it was Defendant's belief that the Option Agreement had expired and that Plaintiff no longer owned an option to the Rights and therefore could not extend the Option for an additional six (6) months or at all.

23.     Subsequent to Plaintiff's valid and enforceable February 1, 2016 extension of the Option to the Second Option Period ending September 1, 2016, Plaintiff was able to locate alternative financing sources for a motion picture based on the Project. Accordingly, pursuant to paragraph 1 of Schedule A of the Option Agreement, Plaintiff exercised the Option on April 5, 2016 by sending Defendant written notice of such exercise along with a check for Eighty Three Thousand Dollars ($83,000), representing

the Purchase Price of Eighty Two Thousand Dollars ($82,000) and the One Thousand

Dollars ($1,000) extension payment that Defendant had previously refused without

cause.

24.     Defendant has refused to accept the payment of the Purchase Price and

extension and has maintained his position that the Option Agreement has expired and

that Plaintiff does not own the Rights in the Work.

## **FIRST CLAIM FOR RELIEF**

### **(Declaratory Judgment - 28 U.S.C. § 2201)**

25.     Plaintiff hereby realleges and incorporates by reference the allegations of

paragraphs 1 through 24 of the Complaint as though fully set forth herein.

26.     There is an actual, substantial and continuing controversy between Plaintiff

and Defendant regarding the ownership of the Rights.   Plaintiff contends that it properly

extended the Initial Option Period and subsequently exercised the Option under the

Option Agreement and purchased the Rights by tendering notice and payment therefor to

Defendant.   Defendant, on the other hand, contends that the Option Agreement had

expired when Plaintiff extended the Initial Option Period on February 1, 2016 and that

said extension, and Plaintiff's subsequent exercise of the Option and purchase of the

Rights on April 5, 2016 were invalid.

27.     Moreover, this actual and ongoing controversy is ripe for judicial determination.  Plaintiff has already engaged casting directors for the movie Project based on the Work, and is prepared to make "pay or play" (i.e., guaranteed) offers to certain cast members, with a proposed "start date" to commence principal photography in the fall of this year.  However, unless and until Plaintiff can obtain a declaratory judgment that it owns the Rights, it cannot warrant a clear chain of title to its financiers and proceed with the production of the Project.  As a result, Plaintiff risks losing the Project financing and the availability of its preferred cast and crew.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff pray that this court enter judgment against Defendant as follows:

1.     For a declaration that Plaintiff is the owner of the motion picture, television, other screen media and certain allied and ancillary rights in and to the novel THE PITCHER  (the "Rights") as set forth in the parties' Option Agreement;

2.     For a permanent injunction prohibiting Defendant from communicating to any third party in any manner that Plaintiff does not own the Rights, from negotiating with any third party to convey, assign, license or transfer the Rights and from conveying, assigning, licensing or transferring the Rights to any third party;

3.    For Plaintiff's costs of suit herein, including its reasonable attorney's fees and expenses; and

4.    For such other and further relief as the court deems just and proper.

DATED:  May 3, 2016        LAW OFFICES OF MICHAEL R. BLAHA

By:  /s/ Michael R. Blaha
       MICHAEL R. BLAHA
       Attorneys for Plaintiff
       GIGANTIC PICTURES, INC.